UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEE ROY WATERMAN,

               Petitioner,

    -vs-

SUPERINTENDENT,
ORLEANS CORRECTIONAL FACILITY

               Respondent.

**DECISION AND ORDER**
**No. 08-CV-6405T**

_____

**I.   Introduction**

*Pro se* petitioner Lee Roy Waterman ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 20, 2005, in New York State, County Court, Wayne County, convicting him, after a jury trial, of two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law ("Penal Law") § 220.39[1]) and two counts of Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

### A. Introduction

On February 25-26, 2005 (over the midnight hour) and March 30, 2005, Marlin Richardson ("Richardson"), a confidential informant, made two "controlled buys" of crack cocaine from Petitioner, whom he had known for about ten years. Police electronically monitored the transactions.

On or about July 14, 2005, a Wayne County grand jury charged Petitioner with two counts of Criminal Sale of a Controlled Substance in the Third Degree (Penal Law § 220.39[1]) (one count each for the February 25-26th and March 30th transactions), and two counts of Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1]) (one count each for the February 25-26th and March 30th transactions).

On December 13, 2005, Petitioner proceeded to trial before the Hon. Dennis M. Kehoe and a jury.

### B.  The Trial

#### 1.   The People's Case

Deputy Sheriff Jonathan Hall and his supervisor, Sergeant Robert Milby, both of the Wayne County Sheriff's Office, worked with Richardson during 2004 and 2005. Trial Trans. [T.T.] 250-54, 324, 384-85. In 2004 and 2005, Richardson had assisted the Sheriff's Office in performing about thirty controlled drug transactions. T.T. 255, 360.

The officers decided that Richardson should attempt to purchase drugs from Petitioner, whom Richardson had known for about ten years. T.T. 321. Close to midnight on February 25, 2005, Richardson met with Deputy Hall and Sergeant Milby at the Sheriff's Office. T.T. 257, 323, 385. Deputy Hall had Richardson remove the contents of his pockets so that he would carry only the $40 worth of pre-recorded "buy" money that Sergeant Milby gave him for the transaction. T.T. 258, 324, 385. Deputy Hall checked Richardson's shoes, socks, and clothing hems for contraband. T.T. 258, 325, 386. With these devices, Deputy Hall and Sergeant Milby could hear any conversation that Richardson had. T.T. 259, 387.

Deputy Hall drove Richardson to 58 Water Street in Lyons, New York. Richardson knew that Petitioner would be in apartment 2 in that building. T.T. 327, 385. Deputy Hall parked his car in a spot which afforded an unobstructed view of the front door of the residence. T.T. 266, 388, 405. Sergeant Milby, in a separate car, parked on Water Street in an area that provided a view of the front door of Petitioner's residence. T.T. 266-67.

As Sergeant Milby and Deputy Hall watched, Richardson entered 58 Water Street. T.T. 267, 327. Petitioner answered the door, and Richardson asked him for a "forty." T.T. 329-30. Petitioner entered a back room and returned with two pieces of crack cocaine. T.T. 330. Richardson paid him the $40 that Sergeant Milby had previously given him. T.T. 330. Helen Marcano ("Marcano"),

Petitioner's girlfriend, and Marcano's brother, Paul Sturgelli, were also in the apartment. T.T. 337, 364, 406.

After the five-minute transaction, Richardson returned to Deputy Hall's car and gave him the two unpackaged rocks of crack cocaine. They all returned to the Sheriff's Office, and Deputy Hall searched Richardson. T.T. 268, 337, 366, 389, 405.

On March 30, 2005, at about 9:00 p.m., Richardson met with Deputy Hall and Sergeant Milby at the Sheriff's Office again to outfit Richardson for another transaction with Petitioner. T.T. 270, 337-38, 383. As before, Richardson was searched and a transmitter/receiver and microphone were affixed to his body. T.T. 270. Sergeant Milby gave Richardson $50 in pre-recorded "buy" money. T.T. 270, 290, 338, 366, 383.

Deputy Hall drove Richardson to 58 Water Street and parked close by, and Sergeant Milby parked in the vicinity as well. T.T. 270-71, 339. The transaction, which the officers could hear over their receivers, took over one-half hour. T.T. 271, 394.

Regarding that transaction, Richardson testified that Petitioner again answered the door and Richardson asked for $50 worth of crack cocaine. T.T. 339. Petitioner told him that he did not have it and he had to go and get it. T.T. 339. Petitioner asked to use Richardson's cell phone, but Richardson said no; Petitioner did not want to use his own phone. T.T. 339. Richardson gave Petitioner $50, and Petitioner left the apartment.

-4-

T.T. 340. Reggie Wynn ("Wynn"), who had been in the apartment when Richardson arrived, remained behind. While Wynn and Richardson waited for Petitioner to return, Marcano arrived at the apartment. T.T. 340-41.

Petitioner returned about one-half hour later. T.T. 341, 367. Petitioner tried to smoke the crack cocaine that he had obtained for Richardson and Richardson protested, explaining that the drugs were for someone else. T.T. 343. Richardson ultimately agreed to chip a piece from one of the rocks for Petitioner's use. T.T. 344. Richardson then left the apartment and gave Deputy Hall the two loose rocks of crack cocaine. T.T. 345-46.

Sergeant Milby and Officer Steven Brendlinger, of the Village of Lyons Police Department, arrested Petitioner on July 29, 2005. T.T. 305, 416. Petitioner tried to avoid arrest by running from the officers. T.T. 304-05. Officer Brendlinger, who had known Petitioner since elementary school, testified that he recognized Petitioner's voice on the CD Rom recording of the March 30th transaction. T.T. 419-20.

The prosecutor and defense counsel stipulated that the substance purchased by Richardson was crack cocaine. T.T. 213, 218-19.

### 2. The Defense's Case

Petitioner presented no evidence at trial.

### 3. Verdict and Sentence

On December 15, 2005, Petitioner was found guilty as charged. T.T. 543-44. On December 20, 2005, Petitioner was adjudicated a second felony offender, and the court sentenced him to determinate prison terms of four years on each count. Sentencing Mins. [S.M.] 14. The court ordered the counts arising from the February 25-26th transaction to run concurrently to each other and the counts arising from the March 30th transaction to run concurrently with each other, but ordered the two sets of concurrent sentences to run consecutively to each other. S.M. 10-12. Petitioner was also sentenced to three years of post-release supervision. S.M. 12.

**D. Petitioner's Direct Appeal**

The Appellate Division, Fourth Department ("Fourth Department"), unanimously affirmed Petitioner's judgment of conviction. People v. Waterman, 39 A.D.3d 1259 (4th Dep't 2007) (Resp't Ex. D); lv. denied, 9 N.Y.3d 927 (2007).

**E. The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the following ground: ineffective assistance of trial counsel. See Pet. ¶ 22A (Dkt. # 1). Petitioner's claim is exhausted and properly before this Court.

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

   B.   **Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. The Merits of the Petition**

Petitioner argues, as he did on direct appeal, that he was deprived of his right to effective assistance of counsel based on the following: (1) counsel failed to listen to the recordings of the drug transactions before they were admitted into evidence; (2) counsel unreasonably incorporated his trial order of dismissal arguments into his summation; and (3) counsel was ineffective at sentencing when he expressed his hope to the sentencing court that Petitioner "would only get a year" when Petitioner could not receive such a sentence since he was a predicate offender. See

Pet. ¶ 22A. The Fourth Department rejected this claim on the merits.[1] Waterman, 39 A.D.3d at 1259.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

---

[1] The Fourth Department ruled as follows: "We reject the contention of defendant that he was denied effective assistance of counsel. The alleged errors in defense counsel's representation set forth by defendant in support of his contention are mere disagreements with defense counsel's trial tactics, and defendant has failed to establish the absence of strategic or other legitimate explanations for defense counsel's alleged shortcomings. Viewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation, we conclude that defendant received meaningful representation." Waterman, 39 A.D.3d at 1259 (internal citations and quotations omitted).

conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

**A. Failure to Listen to Recordings of the Drug Transactions**

Petitioner contends that he received ineffective assistance of trial counsel based on counsel's alleged failure to listen to the recordings of the drug transactions before they were admitted into evidence. See Pet. ¶ 22A. This claim fails.

Prior to jury selection, a conversation occurred between the court and both attorneys in which the prosecutor indicated that defense counsel was to hear the audio tapes of the drug transactions at the "noon recess" that day. T.T. 19. There is nothing in the record, nor has Petitioner pointed to anything outside the record, that suggests that defense counsel did not, in fact, review said tapes as the prosecutor indicated he was going to do. At trial, defense counsel indicated, on the record, that he reviewed the transcripts of the tapes and they contained some "non-relevant" material, to which he objected. T.T. 337, 349-50. At no time during the trial did counsel complain that he had not heard the tapes. Based on the initial statement made by the prosecutor prior to trial along with the subsequent discussions about the tapes at trial, it is clear that counsel listened to the tapes before they were admitted into evidence. Accordingly, this portion of Petitioner's ineffective assistance of trial counsel claim fails

to the extent it is unsupported by the record and based on speculation.

### B. Unreasonable Incorporation of Trial Order of Dismissal Arguments into Summation

Petitioner argues that he received ineffective assistance of counsel based on counsel's allegedly unreasonable decision to incorporate his trial order of dismissal arguments into his summation. See Pet. ¶ 22A. This claim also fails.

The record reflects that defense counsel requested and was permitted to make his trial order of dismissal argument at the same time he delivered his closing so as to avoid "making the same argument twice." T.T. 430, 441. Given the particular facts and circumstances of this case, defense counsel's decision to make the motion argument at the same time he delivered his closing argument was not unreasonable. T.T. 441. As counsel explained to the trial court, he intended to (and did indeed) make a reasonable doubt argument on summation. T.T. 441. In his trial order of dismissal, he argued that the prosecution failed to meet its burden of proof. See CPL § 290.10[1].

In any event, even if counsel's decision to incorporate the trial order of dismissal argument into his summation was objectively unreasonable, Petitioner cannot establish that the decision to do so prejudiced him. That is, the trial court permitted counsel to incorporate his motion argument into his summation; it did not refuse to entertain the motion argument.

Petitioner does not allege that the motion would have been granted had counsel made it separately from his summation, and there is nothing in the record before this Court that suggests so. To this extent, Petitioner cannot show that, but for counsel's alleged error, there is a reasonable probability that the outcome of his trial would have been different. Thus, this portion of Petitioner's ineffective assistance of counsel claim is meritless and provides no basis for habeas relief.

### C. Ineffective Assistance of Counsel at Sentencing

Petitioner contends that he received ineffective assistance of counsel at sentencing because counsel misunderstood that the minimum prison sentence Petitioner faced was three and one-half years, rather than one year. See Pet. ¶ 22A. This claim fails as well.

That counsel was initially mistaken about the minimum prison sentence Petitioner faced does not, by itself, evidence ineffective assistance of counsel, as Petitioner argues. When the sentencing court apparently explained to defense counsel, off the record, that Petitioner faced a minimum of three and one-half years in prison (not one year) because of a prior predicate offense, he quickly corrected himself and requested that the court impose the minimum three and one-half year sentence.[2]  S.M. 4-5. Counsel had no

---

[2] Notably, Petitioner ultimately received a sentence that exceeded the minimum by just six months. S.M. 14.

reason to request a predicate felony hearing given that Petitioner had already admitted his prior conviction, and given that, as the court noted on the record, Petitioner's criminal history was so lengthy that "[he] probably qualif[ied] as a persistent felony offender." S.M. 10-14. Given the strength of the People's case and Petitioner's lengthy criminal record, this Court cannot find that there is a reasonable probability that the outcome of the proceeding would have been different, but for, counsel's alleged errors at sentencing. Thus, this portion of Petitioner's claim is meritless and provides no basis for habeas relief.

In sum, the Court finds that the state court's determination of this claim was not contrary to or an unreasonable application of settled Supreme Court law. Petitioner's ineffective assistance of trial counsel claim is therefore dismissed in its entirety.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: February 24, 2011
Rochester, New York